Okay, our next case is 23-9502, which is an oral argument on the notice to show cause that our court issued under Local Rule 46G. As permitted, Mr. Key has requested a hearing, and we're glad to have you here, sir, and appreciate, you know, counsel who's been assigned to assist us as well. So we'll begin with your argument, Mr. Key, and we'll hear from you. Thank you. Good morning to all three of you. I am Mark Key. I am representing myself pro se in this action. Throughout this, as you know, this is a disciplinary hearing that occurred in North Carolina, and throughout this, the disciplinary case, there was, I would contend, due process violations after due process violations. There were instances where there, as you know, the legal standard that we use is whether there's a due process violation or whether there were an infirmity of proof in these cases. And one of the things I listened to, I listened to this first case that you guys heard, and some of the things that, some of the questions that you guys were asking, one of the questions was, Judge Prebaum, I'm messing your name up, so I apologize. No worries. You asked, in that first place, whether there were conflict in reports and whether, you know, the fact finder can make a determination as to whether, you know, the credibility of certain reports. The interesting thing about this disciplinary case is that it was, it's not about whether you believe a witness or not. It's not about the credibility of witnesses. It's actually more about whether there was evidence to support the, many of the causes that were filed against me. And I will submit to you that there was not, and it's seven claims. The first claim is about whether I withheld income taxes from employees' wages. I have always argued that there was no evidence to support that I was even required to withhold income taxes from their wages. For example, with my, one of the people that worked for me, she filed an exemption from  The other one had enough allowances that I wasn't required to withhold from hers. And the state bar didn't prove otherwise. And then the others made money that was less than the threshold necessary to withhold taxes. And I put all of that in my brief. And so with regard to that, there was no evidence to support the fact that I, their opinion that I had to withhold taxes from these employees' wages. In fact, one of the employees testified on my behalf. The other two would have testified on my behalf, but for the fact that they were, their father had been diagnosed with cancer and was not able to make it to the hearing. And so there was an infirmity of proof as it relates to that. Not only was there an infirmity of proof, I would also argue that there was a due process violation. If you look at the complaint that was filed by the North Carolina State Bar, the complaint does not list what employees I was required to withhold taxes from, whose wages I was required to withhold taxes from. It doesn't give you much detail at all. All it says is that Mr. Key failed to withhold taxes from certain employees' wages. Not only does the complaint not, does not give you any specification, but during the employee, I was required to withhold taxes from. And so, and the order, the order doesn't say that. So you have the complaint that doesn't say it. You have the evidence that doesn't say it. And you have the order that does not say what employee wages I was, I had to withhold taxes from. The second issue was whether in 2019, the third quarter, fourth quarter of 2019, I was required to send over to file my employee a quarterly tax return on time, which was January 31st of 2020. January 27th of 2020, my sister passed away. So I went to New Jersey to deal with her funeral and things of that nature. And then when I came back, I filed the tax return shortly thereafter. And I paid with the employee's portion of whichever money I withheld from employees, I paid that to the Internal Revenue Service whenever I filed my quarterly report. And so they determined, or the DHC, which is the Disciplinary Hearing Committee, determined that I committed a felony. Well, first of all, that couldn't be a felony. Even with all the evidence, it is not a felony to file your taxes late. It's a misdemeanor. It's not a felony, but they determined that it was a felony, number one. And number two, was it willful or not willful? Of course, if I'm in New Jersey attending my sister's funeral, dealing with that, I would submit that it was not a willful situation. And then thirdly, with regard to me sending half of the money in for the quarterly tax return for 2019, that was all of the money that was withheld from employees' wages. In order to be found guilty of a felony pursuant to 26 U.S.C. 7202, you have to not submit the employee's portion of the money, not the employer's portion, but the employee's. And that's exactly what I did. That's all the evidence that was presented with regard to that issue, is that I submitted the employee's portion, the money that was withheld from their wages, to the IRS. There was no other evidence. There was nothing to the contrary. There was nothing to weigh. There was no credibility issue. It was very, very clear. And so I could not have committed a felony. And just to let you know, the Eastern District of North Carolina, the federal, well, the federal court tried to indict me on that issue, but there was no indictment. They tried to indict me at least twice, and there was absolutely no indictment. And that was part of the evidence. And this is nothing new. This is something that I said during the hearing, is that they attempted to indict me. And there was no true bill issue. And there was no true bill issue because the grand jury knew what the DHC should have known, is that there was never, first of all, it's not a felony. And secondly, that there was never any intent on my part to try and commit any felonious act. The third thing, which I have acknowledged, is that my 2015, 2016, 2017, and 2018 taxes were not filed on time. I admit it to them not being filed on time. Now, what makes this interesting is that in 2015, I paid the taxes on time. And I was, I couldn't remember for a while why it is that I didn't file those taxes on time, being the fact that I paid them on time. And later on, which is not part of the evidence, which is not part of the addendum, but I didn't figure that out until the other day, is that I was actually not, I sold my house. And so all of my property was in a storage unit. And so I was living between attorneys and houses who were my friends and other houses until I was able to acquire a residence. So I didn't have that material available to me, but I will accept responsibility for not filing it on time. With regard to the 18 and 17 taxes, there was not even a duty for me to file because I made less than the threshold with regard to 17 and 18 taxes. The other issue is that, and I'm going to skip to, I'm not going to go down each one of the issues unless you guys want me to, but the other thing is that they said I committed mortgage fraud. That was another issue that the grand jury in Eastern District of North Carolina considered, is whether I committed mortgage fraud. No true bill. Not once, not twice, but I understand three times that they attempted to submit that to a grand jury and their standard is significantly less than clear, cogent and convincing. And we all know, we practice law, that a grand jury will indict a ham sandwich. The fact that they did not indict me is proof that I didn't commit any crime. And we're talking about two or three different grand juries. But the DHC didn't see it that way. One of the, and as I said in the very beginning with regard to Judge Baum, is that it's not a credibility issue. It's not whether someone's right or wrong. It's actually a black and white issue when it comes to the mortgage case. There are five things that they argued with regard to the mortgage case. First, they said I made a false statement about whether I had credit or not. As I put in my brief, there was no such thing. I did not make a false statement. I made a true statement and that there was no credit. And as I put in my brief, in order to determine whether a person has credit or not, you have to, credit comes from the seller. Whatever the seller, whenever they're selling something to you, the money has to originate from them. Not from me, but from them. And that's Freddie Mac and Fannie Mae are the people who control the mortgage industry, as you probably know. And as it relates to all of those issues, what I would ask you to do, obviously you probably already have done it, is look at each one of those Fannie Mae instructions and the Fannie Mae, their rules and their regulations, because all my answers to their questions were true. With regard to whether I owed any outstanding taxes at that time, there were issues with regard to whether I owed outstanding taxes or not. I would submit that I did not. In fact, 2018 taxes, they gave me a refund. 2017 is actually still in processing as to whether I owed anything for that year. 2016 is still in processing. In 2015, they didn't give me a refund because I filed too late to get the refund, but they owed me 100 and something dollars. And so the issue as to whether there were any outstanding taxes at the time that I applied for my mortgage was not right, and still is not right, because we're waiting for 2017 for them to determine whether, in fact, I owed any taxes. But the DHC said you owed it for 2017, despite the fact that it's in processing to determine. In fact, the DHC said I owed it for 2015, despite the fact that IRS issued, on page 200 of the joint appendix, where the IRS said I didn't owe anything. So even though the IRS said I didn't owe anything, the DHC said I did. There are two things that we have in our lives. One is our reputation, and one is our word. When the state bar said I made dishonest statements, untruthful statements, the more you say that a person makes dishonest statements and untrue statements, the more that people actually believe that, unless they've taken a pillot, one by one, and look at each one of the questions to determine whether, in fact, I was being honest or whether I was being dishonest. And I would submit to you every time I was being honest. I was not trying to be dishonest. I wasn't trying to deceive anyone. For example, in a meeting that I had on July 7th of 2021, with the state bar, they said that I lied about paying $12,000 in taxes in the early part of 2020. But all they had to do was look at my bank statements, because my bank statements actually showed that. It shows I paid that amount. They said I lied about the first time I ever saw my mortgage application. That was not an attempt to lie. And so many of the things that they said that was not true was actually true. And so this is not about credibility. And the most important thing I want to talk about in the next three minutes is that the North Carolina State Bar had this policy where you could not conduct discovery. So you cannot conduct discovery. So what happens is that they give you a complaint. You answer that complaint, and they're allowed to conduct discovery. They continue interrogatories. They can have depositions. They can have all this stuff. But you couldn't do it. And if I had the option or opportunity to have discovery, I would have been able to call witnesses to the stand that I knew was going to be an issue. I didn't have that opportunity. In fact, even the main witnesses that I tried to call to the stand, they were not allowed to be called to the stand because they said I didn't put that person on the witness list, although the North Carolina State Bar had, in my responses to their discovery, had the people's address, had their phone numbers, had their address, their names in order to contact them. I felt like this was a trial by ambush, which means I had no opportunity, very little opportunity to fully defend myself because I didn't know where they were going. I couldn't conduct any discovery. And with regard to the trust account situations, I had no opportunity to defend myself with regard to that because I didn't know what clients they were talking about. They said that certain clients, their ledgers were incorrect. Did you receive Exhibit 300? Did you receive the State Bar's trial exhibit ahead of time? They say you received a spreadsheet reflecting their audit of your trust account. I think that's an excellent question. I received that very shortly before the trial, very, very shortly before the trial. I did not have an opportunity to contact, even with that, Your Honor. It's not accurate to say you did not receive any information, but it's more accurate to say you received it maybe closely before the trial began. Well, I think it's accurate to say that I didn't have an opportunity to engage in discovery. I didn't have an opportunity to ask them questions. What does this mean? You gave me this thing regarding my trust account, which by the way, no attorney has ever been suspended for these issues with regard to the trust account. But it would be accurate to say that shortly after that I was not able to ask questions about that spreadsheet. So you could give me a spreadsheet, but I need to know what you're talking about, what clients you're talking about. I could have had those clients come in and testify on my behalf. And so, yes, I did receive that shortly, shortly before the hearing from them. But even with that, like I said, it's just a spreadsheet. So I know my time's up, but thank you for that question. Okay. Mr. Key, thank you. You do have some time left on rebuttal, and we'll hear from you then. In the meantime, we'll hear from Ms. Bannon. May it please the court. Good morning. My name is Carmen Bannon, and I am the counsel for the North Carolina State Bar. I was also one of the prosecuting attorneys in the underlying disciplinary matter, which resulted in the suspension of the respondent's license. And I've been appointed by this court pursuant to Rule 46G10 to present these matters to all of you. I'm honored to have an opportunity to talk to you about the disciplinary process in North Carolina, and mostly I hope that I am able to answer whatever questions you may have. Before I address the more general issues, I might as well respond to the last couple of that Mr. Key made. Unfortunately, we're a little bit limited here because you don't have the entire record of the underlying disciplinary case. However, I am looking at a 56-page response that the State Bar provided to Mr. Key to his interrogatory's request for introduction in the case. And then there's also an additional six-page set of responses that the State Bar served in response to a second set of discovery from Mr. Key. So is it, counsel, is it on the issue of whether there is discovery to someone who is the subject of disciplinary proceedings, whether they have any discovery opportunity that corresponds to the commission? How does that work? It sounds like there was discovery. So is it typically the case that the subject of the complaint does get information about the charges? Yes, Your Honor. The rules of civil procedure apply in disciplinary proceedings in North Carolina. So the full panoply of discovery, depositions, all kinds of written discovery, requests for documents, subpoena power, both the State Bar and the defendant have all of those mechanisms available for establishing the issues before trial. And Mr. Key availed himself of those processes in this case. Now there were certain questions posed to which the State Bar responded with objections. Mr. Key did not file a motion to compel, did not follow up on any of those requests. What's the, kind of a, somewhat of a bigger picture, and we can, you know, apply it in the specific counts here, but a couple of the, a couple of the findings or the charges relate to finding of criminal activity. And as Mr. Key points out, he was not charged for those things before or after. Yeah, I take it that that, a charge, the absence of a charge doesn't mean you can't make the finding. But, you know, is the, does the, does the absence of a criminal charge bear on the disciplinary commission's decision at all? No, Your Honor, generally not. The presence of a conviction would preclude any, you know, re-litigation of the facts underlying that conviction. But the absence of a criminal conviction isn't germane in that there are many reasons with prosecutorial discretion why certain charges may or may not be brought by both federal and state prosecutors. So, you know. That's true, that's certainly true, but if something is presented to a grand jury and there's not a return, is that not different than prosecutorial discretion? I will say that there, I am not, I am not aware of any basis upon which Mr. Key or anyone else would be aware of what was presented to a grand jury in the Eastern District of North Carolina. So I don't believe that that is a fact established by the record in this case. Okay. So I believe that that's really what I wanted to address just in response to that last point Mr. Key made. Given the focus of the bulk of his argument, I believe the most important principle here is that this reciprocal discipline proceeding is not an opportunity to re-litigate factual and legal disputes in the respondent's underlying disciplinary matter. Rather, under Selling v. Radford and subsequent decisions, the court's inquiry is essentially whether there was some glaring procedural defect or other deficiency in those underlying proceedings. Yes, yes, your honor. One question. He has this argument, speaking of Selling's due process argument, that he was not, that I guess it's that the allegations that the allegations against him, I guess, were broad and that there were not specific allegations as to which accounts or which ledgers were inaccurate and so therefore he did not receive due process, which would of I guess the first prong of Selling's. So I just want to hear your response regarding that. Yes, your honor. There's a bit more context beyond just what is on the face of the complaint here in that the investigation into these matters was ongoing for years and there was a lot of forth between the State Bar and its investigation and Mr. Key trying to sort out and understand the documents that were produced to the State Bar regarding his trust account. So there certainly was some more contextual information about which ledgers might have been problematic that Mr. Key had based on the investigation. The complaint, it's a notice pleading and that generally means that there is enough information there for the defendant to understand the nature of the allegations. If Mr. Key truly believed that this complaint on its face didn't give him sufficient notice, he again, because the rules of civil procedure apply, was perfectly able to move for a more definite statement, request more specific information. I'd submit to you, and again, you don't have the entire transcript in front of you, but that Mr. Key had had no trouble cross-examining at length the State Bar investigator who performed that audit of his trust account. Counsel, could someone who's a subject of proceeding who receives a complaint that doesn't identify the client submit interrogatories asking for the identification of the clients? Is that subject to discovery? Yes. Yes, sir. Yes, sir, it is. Again, I believe that some of the difficulty here may be in the way that those questions are phrased. If they are phrased in a manner that goes directly to counsel's mental impressions, then they may be met with an objection. If they're phrased properly, that information would be available in discovery. It's a little bit dangerous for us to get too deep into the weeds of that proceeding, perhaps, but it sounds like there may have been discovery requests seeking information. There were disputes over the request, which in civil litigation normally resolve by motion to compel and a hearing on that. Even though that's outside the record, I probably shouldn't get too far into it, but it sounds like this may have been the subject of discovery and discovery disputes in the absence of maybe a motion to compel. Is that fair? It could have been the subject of a motion to compel. It was not. There were certain objections submitted in the state bar's responses to interrogatories, and Mr. Key did not pursue that. He did not pursue any action from the hearing commission, which can and regularly does rule on discovery disputes. Again, I'm reviewing the state bar's responses to discovery here, and all of the ledgers that became the subject, the specific examples of the inaccurate client ledgers by Mr. Key were produced to him in discovery. Again, these are all his also, but they were provided to him in these responses. So is it in his reply brief, he says that all of his requests, all of his discovery requests were met with responses that they were protected by attorney-client privilege. So are you saying that's inaccurate? The state did actually respond to some of his discovery requests. They did not respond to all of those requests by denying them on the grounds of privilege? Correct. I'm looking at responses to requests for production of documents here, and the materials produced were extensive. Again, if it would be helpful to the court, I don't know if it's possible, but we could certainly supplement the materials with these requests and responses if that would be constructive. So as indicated, and again, I'm happy to answer as many questions as I can about the specifics of the process, but the overall question to be answered here is really, was there something about these underlying proceedings that rendered them fundamentally unfair or illegitimate? And the respondent has not and cannot point to any such defect in the process that resulted in the suspension of his license. As indicated in the brief and a little bit again here today, all of the protections of the North Carolina Rules of Civil Procedure are applicable here. The North Carolina Rules of Evidence are in effect in these trial proceedings. We had a lengthy trial in this case, during which Mr. Key was entitled to be represented by counsel. He chose not to be, but he had the opportunity to introduce his own evidence and exhibits, testimony. He cross-examined the state bar's witnesses at length, and he was entitled to appeal from that decision directly to the state court of appeals, which he did. So as I said earlier, he did avail himself of all of the process that is available to defendants in disciplinary proceedings in North Carolina. Wasn't there a remand and then some post-remand hearing and then an additional decision? I mean, there was a second round of process after the first seven-day trial, right? Correct, Your Honor. There was an additional two days of hearing. The state bar took the position that no additional hearing was necessary, in that the basis for remand was sort of a deficit in the deliberation and the order of the disciplinary hearing panel. But the decided just to ensure, again, that the defendant had ample opportunity to be heard, that they would allow another two days' worth of evidentiary hearing post-remand. And the post-remand order had changes to the portion of the order regarding what discipline was appropriate, but did not have any changes to the factual findings or conclusions regarding the defendant's misconduct. Those had been reviewed in detail, as you all can see from the North Carolina Court of Appeals, very long opinion in this case. Those have been examined and were not disturbed at all on remand to the hearing commission. Did that answer your question? Yes, thank you. Okay. So, the first issue in these cases is the notice and opportunity to be heard portion that we've been discussing. The second consideration here for the court is whether the evidence supported the findings that were made. I believe, as I just said, that, well, first of all, it is challenging to address alleged infirmity of proof when this court does not have the complete record. What I added to the joint appendix were transcript exhibits simply to illustrate for the court the length of the hearing, the number of witnesses, and the number of exhibits that were introduced both by the State Bar and by the defendant, just to show you that this was a robust trial process. The State Court of Appeals decision demonstrates that the respondents' arguments regarding infirmity of proof were thoroughly evaluated and rejected by the State Court of Appeals, and that court had the benefit of the entire underlying record. So, our Court of Appeals upheld all of the findings that were challenged there, and many of which are being challenged again before you. But the State Court of Appeals made its conclusions under this whole record test that is applied, and under that test, they found that all of the hearing commission's findings were supported by substantial evidence that was clear and convincing, and that analysis did take into account any contradictory evidence or any evidence from which conflicting inferences could be made. So, the State Bar and the Disciplinary Hearing Commission and the North Carolina Court of Appeals all concluded that there was clear and convincing evidence establishing the misconduct set forth in the order of discipline. And the fact that Mr. Heide disagrees is not sufficient to demonstrate the infirmity of proof that would be required for the federal court to depart from the state disciplinary decision. The third element that is to be considered by you all in this matter is whether there's any other grave reason for departing the discipline imposed by the state. And to that point, Mr. Key contends that the discipline imposed was too harsh, but doesn't offer any authority suggesting that is true. Under Local Rule 46G2, there is a presumption that the discipline imposed by the state is appropriate, and the respondent here has not rebutted that presumption. So, really the only question before you is whether this court will mirror North Carolina's decision to suspend the respondent from practice before your court. And as Mr. Key has not provided any reason under the selling analysis not to do so, the court should impose reciprocal discipline, suspending Mr. Key from practice before the court until his North Carolina law license is reinstated. I believe that's all I have unless you all have any further questions. Judge Rushing, Judge Benjamin, any other questions? No. Thank you, counsel. Thank you. Mr. Key, let's get the clock set and then I think it's set now. So, you now have three minutes on rebuttal. Thank you, sir. Thank you very much. Judge Rushing, I want to talk to you first because you asked the questions about discovery. The current discovery situation with the state bar is different from what it was when the complaint was first filed against me. Now, you have an opportunity to do interrogatories and production of documents. When I was first charged, you didn't. So, the legislation... Do you disagree that you actually gave the state interrogatories? I gave them interrogatories and with every single interrogatory, every single one, they said attorney-client privilege. They didn't answer a single one of those interrogatories. So, you are disagreeing with Ms. Bannon's representation that she was just looking at a document where they responded to your interrogatories with anything other than attorney-client privilege. She says 56 pages. I'm 100% disagreeing with that. Okay. We're going to need to see that, I think, then. I'd like to ask the state to please submit that in a supplemental plea. Now, I requested some production of documents, Judge Rushing, and they provided me the same documents that I already had. It was nothing new. So, what they did with regards to the ledgers, for example, I think there was a question regarding the ledger. Are you now saying that they responded by producing documents in response to your request? My interrogatories are not that... I'm talking about interrogatories. Interrogatories and production of documents. Interrogatories and production, right. Right. Now, the production of documents, I received some documents, not all, and with regards to interrogatories, I didn't receive a single answer to an interrogatory. None. And all of their answers were attorney-client privilege. And your argument is that even though you had process, that the fact that responses are privileged means it wasn't due process. Is that your argument? That's a good question. That is accurate because it was a trial by ambush. In order to ask certain questions about what witnesses you're going to call, what is this witness going to testify to? What clients are you saying their ledgers are inaccurate on? Which clients are you saying that I did certain things to? None of that was in the complaint. None of that was in the order of discipline. But I have 28 seconds left, and what I want to say to you guys is one thing. The infirmity of proof is very serious. I don't care what the North Carolina Court of Appeals said. They were wrong. They were inaccurate. When it comes to the facts and you apply the facts to the law, the conclusions of law, the facts did not support the conclusions of law. And so I would ask you most humbly to just look at each one of those claims and compare the facts to those claims. And you'll find that there's not sufficient evidence that there was an infirmity of proof. You'll find that there was due process violations. Regardless of what I say, I just want you guys to look at the record, and I gave you everything that you needed. And you'll see that I didn't commit any felonies, any of these crimes. The only issue would be me failing to timely file my taxes. And then there's a couple other very small things. For example, I kept my own funds in a trust account too long. When I first put them in the trust account, they were a client's funds. I did the work, and I just kept forgetting to write a check out to myself. So that's called commingling. So stuff like that. But under no circumstances did I intend to lie or commit any crime or any of that nature. Now, with regard to the Court of Appeals, you can look at their order, and I would ask you to look at their order. And even the facts within their order does not support the conclusions of law. And so just like we tell jurors, apply the law, the facts to the law. And in this case, if you apply the facts to the law, you will see that those facts are not sufficient to support their conclusions of law, whether it's the DHC or whether it's the North Carolina Court of Appeals. Thank you, counsel. I appreciate your arguments. We all do. And to both of y'all, we appreciate y'all's help in giving us the materials to help us resolve this and your arguments here today. As we said to the last panel, our practice is to come down after argument and to greet counsel and to thank y'all for assisting us. And we regret this can't be done in a remote oral argument. But please know that we are grateful and we wish y'all the best. And we'll take this under advisement. And thank you for being here today.
judges: A. Marvin Quattlebaum Jr., Allison J. Rushing, DeAndrea Gist Benjamin